**[J-37-2024] [MO: Dougherty, J.]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

| | | |
|---|---|---|
| KLEINBARD LLC, | : | No. 101 MAP 2023 |
| | : | |
| Appellant | : | Appeal from the Order of the |
| | : | Commonwealth Court at No. 204 CD |
| | : | 2022 entered on April 25, 2023 |
| v. | : | Affirming the Order of the Lancaster |
| | : | County Court of Common Pleas, |
| | : | Civil Division, at No. No. CI-21- |
| THE OFFICE OF THE DISTRICT | : | 06142 entered on February 17, 2022 |
| ATTORNEY OF LANCASTER COUNTY; | : | |
| HEATHER ADAMS, IN HER OFFICIAL | : | ARGUED: May 14, 2024 |
| CAPACITY AS DISTRICT ATTORNEY OF | : | |
| LANCASTER COUNTY; LANCASTER | : | |
| COUNTY BOARD OF COMMISSIONERS; | : | |
| JOSHUA PARSONS, IN HIS INDIVIDUAL | : | |
| CAPACITY AND OFFICIAL CAPACITY AS | : | |
| CHAIRMAN OF THE LANCASTER | : | |
| COUNTY BOARD OF COMMISSIONERS; | : | |
| RAY D'AGOSTINO, IN HIS INDIVIDUAL | : | |
| CAPACITY AND OFFICIAL CAPACITY AS | : | |
| VICE-CHAIRMAN OF THE LANCASTER | : | |
| COUNTY BOARD OF COMMISSIONERS; | : | |
| CRAIG LEHMAN, IN HIS INDIVIDUAL | : | |
| CAPACITY AND OFFICIAL CAPACITY AS | : | |
| LANCASTER COUNTY COMMISSIONER; | : | |
| BRIAN HURTER, IN HIS OFFICIAL | : | |
| CAPACITY AS LANCASTER COUNTY | : | |
| CONTROLLER; AND CHRISTINA | : | |
| HAUSNER, IN HER INDIVIDUAL | : | |
| CAPACITY AND OFFICIAL CAPACITY AS | : | |
| FORMER LANCASTER COUNTY | : | |
| SOLICITOR, | : | |
| | : | |
| Appellees | : | |

**DISSENTING OPINION**

JUSTICE DONOHUE                                        DECIDED: December 17, 2024

The Majority resolves this case by holding that the legal authority by which an elected official acts is a "fact" for purposes of ruling on a demurrer. When a trial court grants "preliminary objections in the nature of a demurrer, our standard of review is de novo and our scope of review is plenary." *Luke v. Cataldi*, 932 A.2d 45, 49 n.3 (Pa. 2007). In reviewing a decision to grant a demurrer, it is axiomatic that we "accept **the facts** alleged [in the] complaint and all reasonable inferences that may be drawn therefrom as true." *Id*. (emphasis added). However, "conclusions of law are neither deemed admitted nor deemed true." *Ins. Adjustment Bureau, Inc. v. Allstate Ins. Co.*, 905 A.2d 462, 468 (Pa 2006).[1] This rock-solid standard stood until today when, without explanation and absent citation to any controlling or persuasive authority, the Majority declares that the dispositive law governing a dispute is just another fact for purposes of deciding preliminary objections. I disagree and respectfully dissent.

This matter began in 2019, when former Lancaster County District Attorney, Craig Stedman (Stedman), retained the private law firm of Kleinbard, LLC (Kleinbard) to represent him in his official capacity as Lancaster County District Attorney concerning a lawsuit that he filed against the Lancaster County Board of Commissioners (Commissioners) for allegedly attempting to constrain his use of forfeiture funds (Stedman Lawsuit). That lawsuit was discontinued by Stedman's replacement, and Kleinbard

---

[1] *Accord Allegheny County v. Commonwealth*, 490 A.2d 402, 408 (Pa. 1985) ("For the purpose of testing the legal sufficiency of the challenged pleading a preliminary objection in the nature of a demurrer admits as true all well-pleaded, material, relevant facts, ... and every inference fairly deducible from those facts, [but] [t]he pleader's conclusions or averments of law are not considered to be admitted as true by a demurrer."); *Appeal of Woods*, 75 Pa. 59, 61 (1874), *overruled on other grounds by Stander v. Kelley*, 250 A.2d 474 (Pa. 1969) ("It is undoubtedly correct, as claimed by counsel for respondents, that the demurrer admits only the truth of the several facts alleged, and not the conclusions of law set out as arising from these facts; and therefore we are bound to determine for ourselves as a constitutional part of the cause, whether these conclusions are warranted by the facts, and not assume these Acts of Assembly are unconstitutional simply because it is so alleged in the bill.").

sought to recover $74,193.06 in unpaid legal fees from the Stedman Lawsuit by filing the instant action[2] in the Court of Common Pleas of Lancaster County. Kleinbard's Complaint, 10/7/2021, ¶¶ 1-2. Stedman never sought pre-authorization for those fees. Instead, before he left the Office of the District Attorney of Lancaster County, Stedman submitted a Lancaster County Voucher Form (Voucher) to Lancaster County Controller Brian Hurter seeking full payment of Kleinbard's fees. *Id*. ¶ 27 (the Voucher is attached to Kleinbard's Complaint as Exhibit C). The Voucher specifically identified three accounts allegedly under the Office's control as sources for payment: (1) the Office's legal account; (2) the Office's drug/alcohol diversionary program account; and (3) the Office's bad check restitution program account. *Id*. ¶ 29 (citing Exhibit C).

It is undisputed that the Office's legal account was budgeted five-thousand dollars in discretionary funds to pay for legal fees in fiscal year 2019. Thus, the essence of this case comes down to whether Stedman had unfettered discretion as Lancaster County's District Attorney to supplement his five-thousand-dollar legal budget with funds from the Office's drug/alcohol diversionary account and bad check restitution account (collectively "Program Accounts") to pay Kleinbard's legal fees. While there is no dispute in this case that these accounts exist, the Majority concludes that Kleinbard's assertion that the Program Accounts' funds were fully within Stedman's discretionary control to use for payment of legal fees in the Stedman Lawsuit is merely a "factual allegation." Majority Op. at 13. Thus, the Majority chastises the Commonwealth Court for failing to take this "factual allegation" as true in adjudicating the trial court decision to dismiss this matter under the demurrer standard. *Id*.

---

[2] Kleinbard's complaint raises causes of action in the nature of mandamus, breach of contract, unjust enrichment, and tortious interference.

However, the scope of Stedman's discretion as Lancaster County's District Attorney to use the Program Accounts' funds is plainly a legal question, not a factual one. It is not a fact that will be determined by a factfinder at trial, it is a question of law regarding the source of and the parameters of the legal authority governing the Program Accounts. Critically, Kleinbard has never cited the legal authority under which the Program Accounts could be used as a legal slush fund to defend Stedman's contested use of drug forfeiture funds. Kleinbard has either refused or is unable to cite such authority. Kleinbard did not cite such authority in its initial complaint,[3] and it did not cite such authority in its response to preliminary objections.[4] The trial court granted the preliminary objections, reasoning that Stedman was limited to the five-thousand dollars appropriated for legal fees for fiscal years 2019. Trial Court Opinion, 2/11/2022, at 9.

In its appeal to the Commonwealth Court, Kleinbard again failed to describe the authority under which Stedman ostensibly had unfettered discretion in the use of these funds. As the Commonwealth Court explained:

> Kleinbard has not provided the Court with any citation to or reference to where or by whom the drug/alcohol diversionary program account and the bad check restitution program account were created, nor have we been able to locate any

---

[3] The Complaint mentions the accounts by name and provides Lancaster County web addresses for those programs, but never states any statutory or other legal authority defining the programs and/or the scope of a district attorney's authority to use such funds. *See* Kleinbard's Complaint, ¶¶ 29-30, 34, 71-74, 114. The web address provided for the bad check restitution program is now defunct, and the link to the drug drug/alcohol diversionary program does not provide any information regarding the legal authority for that program.

[4] Again, Kleinbard only averred that "the Commissioners do not control the entirety of the DA Office's budget" and that of "the $74,193.06 payment to be made to Kleinbard, $69,193.06 of the payment was to be drawn from the District Attorney's Office's drug/alcohol diversionary program and the District Attorney's Office's bad check restitution program accounts, which accounts are not County taxpayer-funded, but instead are funded by fees paid by participants of those programs." Kleinbard's Response to Preliminary Objections, at 2.

information about the programs.  Accordingly, there is nothing for this Court to reference with respect to the limitations, if any, on the use of the funds in such accounts.  Therefore, we are unable to confirm that Stedman was, in fact, entitled to use funds for a purpose other than that for which they are earmarked.

*Kleinbard LLC v. Office of the District Attorney of Lancaster County*, No. 204 C.D. 2022, 2023 WL 3065855, at *4 (Pa. Commw. 2023).

Despite this holding by the lower court, and despite the Majority's finding that the Commonwealth Court was right in the specifics,[5] the Majority flips Kleinbard's burden onto Appellees, inexplicably placing a burden on Appellees to show no such authority exists.  *See* Majority Op. at 13 ("We are unpersuaded by appellees' assertion the issue of whether the District Attorney controls the Program Accounts is a question of law, particularly where they have presented neither facts nor legal support for that position.").[6] Appellees have no burden before us—they prevailed in both lower courts—and whether legal authority exists for a government official to use government funds for a particular purpose is inherently a legal question.[7]  The Majority contends that "the lower courts should have taken Kleinbard's allegations as true and assessed the legal viability of its claim in the context of those facts."  Majority Op. at 14.

What has been pleaded are, at best, legal conclusions and certainly not facts.  The failure to point to a statutory authority for the creation of the Program Accounts and a

---

[5] The Majority acknowledges that, regarding how these programs operate, "neither the panel below nor [A]ppellees seem to have this information."  Majority Op. at 13.  But there is an obvious reason for this—Kleinbard has never provided it at any stage of the current litigation.

[6]  Apart from this problematic burden-flipping, I further observe that it "is seldom, if ever, the duty of a litigant to prove a negative until his opponent has come forward to prove the opposing positive."  *Fazio v. Pittsburgh Rys. Co.*, 182 A. 696, 698 (Pa. 1936).

[7] And this is true whether those funds are derived from taxes, fines, or as alleged here, fees collected from criminal defendants who volunteer for diversionary programs.

district attorney's unfettered discretion to expend funds contained in the accounts should have been the end of the case. Appellant's case is based on the legal conclusion that Stedman had access to non-appropriated funds in the Program Accounts that he intended to use to pay Appellant after he exhausted the five-thousand-dollar budget for legal services. Since the authority to support this legal conclusion was not established by Appellant, the demurrer was appropriately granted.

Here, the Majority conflates law with fact, confuses both our demurrer standard and the relative burdens assigned on appellate review, and demands the impossible from Appellees (proving a negative).[8] Accordingly, I respectfully dissent.

---

[8] In response, the Majority postulates there is a universe of facts in which district attorneys may be permitted to collect and use "these types of funds" in the "absence of laws directly governing them." Majority Op. at 14 n.11. Unconcerned by the proposition that district attorneys (in whom we entrust the prosecution of the laws of this Commonwealth) are collecting money from criminal defendants without any express legal authority to do so, and for the purpose of creating a discretionary account for use by the district attorney for unbudgeted expenses, the Majority merely echoes the Concurrence's recommendation that the General Assembly should "address the matter" and consider "changing the law." *Id*. (quoting Concurring Op. at 8).

The Majority's response betrays the unsalvageable defects in its rationale. **Change what law?** The Majority contrasts this matter with a district attorney's collection and expenditure of drug forfeiture funds, "which are expressly regulated by statute." *Id*. The notion that some other category of fees collected by district attorneys from criminal defendants exists absent any express statutory authority permitting them is belied by the existence of laws explicitly governing the drug forfeiture funds. When the General Assembly intended to grant district attorneys the power to collect and spend money collected from criminal defendants, it did so explicitly. Likewise, the creation of the Program Accounts is necessarily a legislative act. By what authority does a district attorney have the power to legislate in this fashion?

Contrary to the Majority's criticism, I do not pretend that the question of the district attorney's authority over the account can be answered without factfinding about the nature and the source of the funds. The legality of the Program Accounts does not turn on any question of fact. Indeed, it is the Majority that pretends that any discoverable fact could establish a district attorney's legal authority to collect the Program Accounts, much less the authority to deposit the funds into an account for the discretionary use of the district attorney. There is no factual dispute in this case regarding the Program Accounts' existence and that those funds have been extracted from criminal defendants. The only (continued…)

question is the district attorney's legal authority to have unfettered discretion over the use of the funds in this questionable account as alleged in this matter.