Walter C. PALMER and Terry
A. Palmer, husband and
wife, Appellants

v.

Fred BARTOSH, Jr., individually and in his official capacity as Assistant Superintendent of the Wilson Area School District, and Dennis T. Harper, individually and in his official capacity as a Principal in the Wilson Area School District.

Commonwealth Court of Pennsylvania.

Argued Sept. 11, 2008.

Decided Oct. 23, 2008.

1082 (Pa.Cmwlth.2004); *Guy M. Cooper, Inc. v. East Penn School Dist.*, 903 A.2d 608 (Pa. Cmwlth.2006).

John P. Karoly, Jr., Allentown, for appellants.

John E. Freund, III, Bethlehem, for appellees.

BEFORE: PELLEGRINI, Judge, FRIEDMAN, Judge, and LEAVITT, Judge.

OPINION BY Judge FRIEDMAN.

Walter C. Palmer and Terry A. Palmer, husband and wife (Palmers) appeal from the September 28, 2007, order of the Court of Common Pleas of Northampton County (trial court) granting the preliminary objections (POs) filed by Fred Bartosh, Jr. (Bartosh) and Dennis T. Harper (Harper) (together, Defendants) and dismissing the Palmers' amended complaint (Complaint) in its entirety. We affirm in part, and we vacate and remand in part.

On January 25, 2007, the Palmers filed the Complaint against the Defendants, in their individual and official capacities, alleging, *inter alia*, that the Defendants maliciously sought Mr. Palmer's discharge from his teaching position with the Wilson Area School District (District) and seeking compensatory and punitive damages. (R.R. at 11a–30a.) The relevant facts alleged in the Complaint are summarized as follows.

Mr. Palmer taught seventh through twelfth grades for the District, at a time when Bartosh and Harper also were employed as District administrators. There is a long history of personal animosity between Mr. Palmer and the Defendants, which began in 1990 when Mr. Palmer publicly criticized the District's administra-

tion during a lawful job action by the teacher's union against the District. Following the job action, Bartosh, then a principal at the District's high school, initiated charges against Mr. Palmer, and Mr. Palmer was discharged from his teaching position. The Pennsylvania Board of Education subsequently exonerated Mr. Palmer and ordered his reinstatement. (Complaint, ¶¶ 3–12.)

Later, Bartosh was promoted to curriculum director of the District and, as such, was no longer responsible for supervising teaching staff. Nevertheless, in 2003, Bartosh together with Harper investigated Mr. Palmer because Mr. Palmer criticized Harper's performance as middle school principal to Harper's superiors. The investigation resulted in a negative performance review being placed in Mr. Palmer's personnel folder. (Complaint, ¶¶ 13–16.)

On February 9, 2004, a student that Mr. Palmer had reported to the principal for misconduct complained to Harper that Mr. Palmer had touched her inappropriately. Harper immediately contacted Bartosh, now an assistant superintendent of the District, and, without asking Mr. Palmer of his recollection of the incident, the two began a unilateral investigation of the matter. The Defendants met privately with students and coerced and/or coached the students into writing statements alleging misconduct against Mr. Palmer. The Defendants continued their investigation the next day, February 10, 2004, and informed Mr. Palmer of the allegations against him "in a vague way." (Complaint, ¶ 21.) Mr. Palmer requested that a female guidance counselor familiar with the students involved be present for any additional interviews; however, the Defendants rejected this suggestion and continued to interview students without any witnesses present. At the end of the day, Harper placed Mr. Palmer on paid administrative leave effec-

tive immediately. On March 1, 2004, the District Superintendent terminated Mr. Palmer's employment. To date, Mr. Palmer still has not received even the most basic information about the accusations against him and still has not seen the students' written statements. (Complaint, ¶¶ 17–23, 29.)

Following his discharge, Mr. Palmer filed a grievance, and, on May 16, 2006, the arbitrator sustained Mr. Palmer's grievance and reinstated him with full back pay and benefits. The arbitrator found that, despite the Defendants' investigation, the District could not produce any witnesses willing to testify under oath as to the substance of their accusations. (Complaint, ¶¶ 24–27.)

After returning to his employment, Mr. Palmer filed the present action alleging that the Defendants wrongfully pursued Mr. Palmer's discharge without legitimate purpose but, rather, to satisfy their personal animosity. (Complaint, ¶ 28.) The Complaint set forth the following state law tort law claims: (1) defamation (Count I); (2) invasion of privacy (Count II); (3) malicious prosecution in their official capacities (Count III); (4) malicious prosecution in their individual capacities (Count IV); (5) abuse of process (Count V); and (6) civil conspiracy (Count VI). Count VII of the Complaint asserts that the Defendants violated Mr. Palmer's constitutional rights in violation of 42 U.S.C. § 1983 (Section 1983). In count VIII of the Complaint, Ms. Palmer raises a loss of consortium claim based on Mr. Palmer's underlying state tort law claims. (Complaint, ¶¶ 28, 33–73.)

The Defendants filed POs in the nature of demurrers to each count of the Complaint. With regard to the state tort law claims (Counts I though VI and Count VIII), the Defendants alleged, *inter alia,* that, as District employees, they are enti-

tled to immunity pursuant to the act commonly known as the Political Subdivision Tort Claims Act (Act), 42 Pa.C.S. §§ 8541–8564. With respect to the Section 1983 claim (Count VII), the Defendants asserted that the Complaint is completely devoid of any specific facts to support a claim against the Defendants, either in their official or individual capacities, of a violation of the Palmers' constitutional rights.[1] (R.R. at 31a–42a.) The trial court agreed with the Defendants, sustained the POs solely on those grounds and dismissed the Complaint in its entirety. The Palmers now appeal to this court.[2]

## I. State Tort Law Claims (Counts I–VI, VIII)

■ The Palmers first argue that the trial court erred in dismissing their state tort law claims in their entirety based solely on its determination that the Defendants are entitled to immunity under the Act. The Palmers assert that immunity is not available where, as here, the facts allege conduct constituting willful misconduct and/or actual malice. With regard to those claims against the Defendants in their individual capacities, we agree.[3]

Section 8550 of the Act abrogates the defense of government immunity to which a government employee otherwise may be entitled under the Act where it has been judicially determined that the act of the employee caused the injury and that the act was intentional, i.e., constituted a crime, actual fraud, actual malice or willful misconduct. 42 Pa.C.S. § 8550; *Kuzel v. Krause*, 658 A.2d 856 (Pa.Cmwlth.1995). For the purposes of the Act, "willful misconduct" is synonymous with the term "in-

---

1. The Defendants asserted that the Palmers' claims for punitive damages should be dismissed because: (1) defendants sued in their official capacities are immune from punitive damages; and (2) the Palmers failed to allege facts that the Defendants recklessly or callously disregarded a known right. The trial court did not address the Defendants' POs to the requested punitive damages in its opinion.

2. Our scope of review from a trial court's orders granting preliminary objections is limited to determining whether the trial court committed legal error or abused its discretion. *Higby Development, LLC v. Sartor*, 954 A.2d 77 (Pa.Cmwlth.2008). A demurrer can only be sustained where the complaint clearly is insufficient to establish the pleader's right to relief. *County of Allegheny v. Commonwealth*, 507 Pa. 360, 490 A.2d 402 (1985). A preliminary objection in the nature of a demurrer admits as true all well-pled material, relevant facts and every inference fairly deducible from those facts. *Id.* The pleader's conclusions or averments of law are not considered to be admitted as true by a demurrer. *Id.* Since the sustaining of a demurrer results in a denial of the pleader's claim or a dismissal of his suit, a preliminary objection in the nature of a demurrer should be sustained only in cases that clearly and without a doubt fail to state a claim upon which relief may be

granted. *Id.* If the facts as pleaded state a claim for which relief may be granted under any theory of law, there is sufficient doubt to require the preliminary objection in the nature of a demurrer to be rejected. *Id.*

3. However, we conclude that the trial court properly dismissed the state law tort claims, including Ms. Palmer's loss of consortium claim, against the Defendants in their official capacities. Agency employees, like the Defendants here, are liable for civil damages in their official capacities only to the same extent as their employing local agency. 42 Pa. C.S. § 8545; *Scott v. Willis*, 116 Pa.Cmwlth. 327, 543 A.2d 165 (1988). The Act waives governmental immunity only for certain negligent acts of the agency or its employees; where the employee's conduct is intentional in nature, the local agency retains its governmental immunity. 42 Pa.C.S. § 8542; *Lory v. City of Philadelphia*, 544 Pa. 38, 674 A.2d 673 (1996); *Petula v. Mellody*, 158 Pa.Cmwlth. 212, 631 A.2d 762 (1993). Because the Act renders the District immune from claims constituting willful misconduct, and the Palmers do not allege that the Defendants acted negligently, the Defendants also are entitled to immunity in their official capacity.

tentional tort" in that the employee must desire to bring about the result that followed his conduct or be aware that the result was substantially certain to follow. *Kuzel.* The Act does not define "actual malice"; however, it has been defined as the deliberate intent to commit an injury as evidenced by external circumstances. Black's Law Dictionary 976 (8th ed. 2004).

Here, the Palmers alleged that: the Defendants have a long history of personal animosity toward Mr. Palmer; the Defendants engaged in a secretive investigation of the accusation made against Mr. Palmer without ever advising him of the specifics of the charges or seeking Mr. Palmer's version of the events; the Defendants coerced and/or coached students into making written accusations against Mr. Palmer, statements which Mr. Palmer has never seen; and none of the students, including the initial complainant, were willing to testify under oath in the subsequent grievance arbitration proceedings as to the substance of their accusations. We conclude that these allegations raise a fairly deducible inference that the Defendants deliberately intended to injure Mr. Palmer by obtaining his discharge from his employment regardless of the veracity of the accusations made against him and were aware that this result was substantially certain to follow. Because the Complaint alleges conduct that, if proven true, would constitute willful misconduct, the trial court erred in sustaining the POs based solely on its determination that the Defendants are immune from suit. Thus, we vacate the trial court's dismissal of Counts I, II, IV, V and VI of the Complaint against the Defendants in their individual capacities, and we remand the matter to the trial court to address the Defendants' remaining POs to those Counts.

Moreover, because we vacate the trial court's determination concerning the Defendants in their individual capacities, we also vacate the trial court's dismissal of Ms. Palmer's claim against the Defendants in their individual capacities, and we remand for the consideration of the remaining POs to Count VIII. Similarly, because we vacate the trial court's determination concerning the Defendants in their individual capacities, we reinstate the Palmers' request for punitive damages against the Defendants in their individual capacities, and we remand to the trial court for the consideration of the Defendants' POs to the punitive damages request against the Defendants in their individual capacities.[4]

## II. Violation of 42 U.S.C. § 1983

■ Section 1983 provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ..., subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

42 U.S.C. § 1983. For the purposes of Section 1983, an action brought against a municipal employee in his official capacity is treated as an action against the municipality itself so long as the municipality has notice and an opportunity to respond.[5]

4. We note that, contrary to the Defendants' assertions, the Complaint did not seek punitive damages against the Defendants in their official capacities but, rather, only in their individual capacities.

5. For this reason, we reject the trial court's determination that the Palmers' failure to in-

*Brandon v. Holt,* 469 U.S. 464, 105 S.Ct. 873, 83 L.Ed.2d 878 (1985).

The Palmers next assert that they pled sufficient facts throughout their Complaint to establish or raise the inference that the Defendants, acting under the color of state law, acted with personal animus and violated their constitutional rights under the United States and Pennsylvania Constitutions. With regard to those claims against the Defendants in their individual capacities, we agree.[6]

In determining whether plaintiffs have stated a cause of action under Section 1983, the inquiry must focus on whether the two essential elements of the action are present: (1) whether the conduct complained of was committed by a person acting under color of state law; and (2) whether this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or the laws of the United States. *Robbins v. Cumberland County Children and Youth Services,* 802 A.2d 1239 (Pa.Cmwlth.2002). A plaintiff pursuing a cause of action under Section 1983 must plead the facts that give rise to the claimed deprivation of civil liberties and specifically avoid vague and conclusory allegations. *Scott.*

Here, the Palmers allege that the Defendants' conduct deprived them of their rights pursuant to the Fourteenth Amendment to the United States Constitution (Fourteenth Amendment), U.S. CONST. amend. XIV, and article I, section 1 of the Pennsylvania Constitution, PA. CONST., art. I, § 1. (Complaint, ¶ 67.) The Fourteenth Amendment requires due process where the deprivation of an individual's property right, such as the right to continued public employment, is implicated. *Andresky v. West Allegheny School District,* 63 Pa.Cmwlth. 222, 437 A.2d 1075 (1981) (holding that full-time teachers have a protected property interest in continued employment under sections 1122 and 1124 the Pennsylvania School Code of 1949, Act of March 10, 1949, P.L. 30, *as amended,* 24 P.S. §§ 11–1122, 11–1124). Similarly, article I, section 1 of the Pennsylvania Constitution provides that an individual's right to property and reputation may not be deprived without due process. *R. v. Commonwealth,* 535 Pa. 440, 636 A.2d 142 (1994); *Pennsylvania Bar Association v. Commonwealth Insurance Department,* 147 Pa.Cmwlth. 351, 607 A.2d 850 (1992). Due process of law requires that an individual is entitled to adequate notice of the charges against him and an opportunity to be heard. *Dunn v. Department of Transportation, Bureau of Driver Licensing,*

clude the District specifically required the dismissal of the Complaint against the Defendants in their official capacities.

6. However, we conclude that the trial court properly dismissed the Palmers' Section 1983 claims against the Defendants in their official capacities. Under Section 1983, governmental bodies are not liable under the theory of *respondeat superior;* litigants may seek relief against governmental bodies only in cases where the alleged constitutional harm flows from the execution of a policy or governmental custom. *Monell v. New York City Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). The policy or custom need not be formally adopted; rather,

it may come into existence after a single incident if that incident involves a policymaker. *Pembaur v. City of Cincinnati,* 475 U.S. 469, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986); *MacMillen v. Lock Haven Hospital,* 120 Pa. Cmwlth. 444, 548 A.2d 706 (1988), *appeal denied,* 522 Pa. 580, 559 A.2d 41 (1989). Here, because the Palmers failed to plead the existence of a District policy or custom establishing a causal nexus between the District and the Defendants' conduct or that the Defendants are policymakers for the District, the Palmers failed to state a cause of action against the Defendants in their official capacities under Section 1983.

819 A.2d 189 (Pa.Cmwlth.2003). Adequate notice, for procedural due process purposes, requires at a minimum that notice contain a sufficient listing and explanation of the charges against the individual. *Id.*

As previously stated, the Palmers alleged that the Defendants, acting under the color of state law: engaged in a secret investigation; refused to allow a witness to observe their interviews with students; coerced and/or coached students into making accusations against Mr. Palmer, which the students thereafter refused to repeat under oath; failed to advise Mr. Palmer of the specific accusations against him or give him the opportunity to rebut them; and thereby obtained Mr. Palmer's discharge from his employment. We conclude that these allegations of specific conduct taken by the Defendants, which must be taken as true at this stage of this proceeding, constitute sufficient facts to state a claim for deprivation of a property right to employment and reputation in violation of the Fourteenth Amendment and article 1, section 1 of the Pennsylvania Constitution, and, therefore, the trial court erred in sustaining the POs to Count VII against the Defendants in their individual capacities.

Accordingly, we take the following actions: (1) we affirm the trial court's order to the extent that it dismissed the Complaint in its entirety against the Defendants in their official capacities; (2) we vacate the trial court's order to the extent it dismissed the Complaint against the Defendants in their individual capacities; and (3) we remand the matter to the trial court to consider the Defendants' remaining POs to those counts as well as the POs to the Palmers' request for punitive damages against the Defendants in their individual capacities.

Judge SIMPSON did not participate in the decision in this case.

*ORDER*

AND NOW, this 23rd day of October, 2008, the order of the Court of Common Pleas of Northampton County (trial court), dated September 28, 2007, is hereby: (1) affirmed to the extent it dismissed the amended complaint (Complaint) filed by Walter C. Palmer and Terry A. Palmer, husband and wife (Palmers) against Fred Bartosh, Jr. and Dennis T. Harper (together, Defendants) in their official capacities; and (2) vacated to the extent it dismissed the Complaint against the Defendants in their individual capacities. The case is remanded to the trial court for the consideration of the Defendants' remaining preliminary objections.

Jurisdiction relinquished.