COMMONWEALTH of Pennsylvania, INSURANCE DEPARTMENT, Petitioner

v.

KINGSWAY FINANCIAL SERVICES, INC., Kingsway America, Inc., Walshire Assurance Company, Breast Cancer Research Foundation, Association of Modern Chinese Art, Meaningful Life Center, MASBIA, St. Stanislaus Church, New York City Rescue Mission, West Side YMCA, American Foundation for AIDS Research A Better Chance, Lawyers for Children, Leary Firefighters Foundation, Children's Aid Society, Citymeals–on–Wheels, American Foundation for the Blind, Broadway Cares, Project Sunshine, Children's Tumor Foundation, Society for the Advance of Travel for the Handicapped, Seeds of Peace, and National Down Syndrome Society, Respondents.

Commonwealth Court of Pennsylvania.

Argued Feb. 9, 2010.

Decided April 1, 2010.

Zella Smith Anderson, Department Counsel, Harrisburg, for petitioner.

Edward M. Posner, Philadelphia, for respondents, Kingsway Financial Services, Inc. and Kingsway America Inc.

BEFORE: PELLEGRINI, Judge, and BUTLER, Judge, and FRIEDMAN, Senior Judge.

OPINION BY Senior Judge FRIEDMAN.

Kingsway Financial Services, Inc. (Kingsway) and Kingsway America, Inc. (Kingsway America) have filed preliminary objections in the nature of a demurrer to the petition for review (Petition) filed in this court's original jurisdiction by the Commonwealth of Pennsylvania, Insurance Department (Department). We sustain the preliminary objections and dismiss the

Petition with respect to Kingsway and Kingsway America.

The Department alleges the following.[1] Kingsway acquired control of Lincoln General Insurance Company (Lincoln General) in 1998. Kingsway is an insurance and financial services holding company incorporated in Ontario, Canada. Kingsway America is a Delaware corporation and a wholly-owned subsidiary of Kingsway. Walshire Assurance Company (Walshire) is a Pennsylvania corporation and a wholly-owned subsidiary of Kingsway America. Walshire is the sole shareholder of Lincoln General, an insurance company domiciled in Pennsylvania.

In 2005, Lincoln General began experiencing financial distress, and, in March 2009, Lincoln General signed a Letter Agreement with the Department to "run-off" Lincoln General's book of business. Lincoln General subsequently undertook a claim-by-claim review to ascertain the adequacy of its reserves. Before Lincoln General completed its review, Kingsway decided to divest its entire interest in Lincoln General by donating 226,112.55 shares (5%) of Walshire's stock, plus $20,000, to each of twenty charities. During the divestiture process, Kingsway informed the Department of the transaction.

On October 20, 2009, the Department sent a letter informing Kingsway that the transaction was illegal. Kingsway rejected the Department's position in an October 21, 2009, response. On October 26, 2009, the Department advised five of the charities known to have received the donation to return the Walshire stock to Kingsway. At least one charity attempted to do so, but Kingsway refused to accept it.

On November 20, 2009, the Department filed its Petition with this court. The Department alleges that the transaction violated section 1402(a)(1) of the Act known as the Insurance Holding Companies Act (Act),[2] which prohibits a person from entering into an agreement to "acquire control" of a domestic insurer **unless** (1) the person has filed with the Department and sent to the insurer a statement containing certain information, and (2) the agreement or acquisition has been approved by the Department. 40 P.S. § 991.1402(a)(1). The Department refers to this filing as a Form A filing.

The Department also alleges that the transaction violated section 1405(a)(2) of the Act, which prohibits certain transactions "involving a domestic insurer and any person in its holding company system" **unless** (1) the insurer has given prior written notice to the Department, and (2) the Department has not disapproved it. 40 P.S. § 991.1405(a)(2). The Department refers to this filing as a Form D filing.

Finally, the Department alleges that the transaction violated section 205(a) of the GAA Amendments Act of 1990 (GAA Act),[3] which states that any "asset transfer ... of any insurance corporation" shall become effective only if approved by the Department.

Based on these allegations, in Count I of the Petition, the Department seeks a declaration that Kingsway's divestiture of the Walshire stock was illegal. In Count II of

---

1. A preliminary objection in the nature of a demurrer admits as true all well-pled, material, relevant facts and every inference fairly deducible from those facts. *Palmer v. Bartosh*, 959 A.2d 508 (Pa.Cmwlth.2008). A demurrer should be sustained only in cases that clearly and without a doubt fail to state a claim for which relief may be granted. *Id.*

2. Act of May 17, 1921, P.L. 682, *as amended*, added by the Act of December 18, 1992, P.L. 1519, *as amended*, 40 P.S. § 991.1402(a)(1).

3. Act of December 19, 1990, P.L. 834, 15 P.S. § 21205(a).

the Petition, the Department seeks an injunction to "unwind" the transaction. In Count III of the Petition, the Department seeks attorney fees based on section 1402(f)(3) of the Act, 40 P.S. § 991.1402(f)(3) (stating that the Department may retain at the acquiring person's expense any attorneys not otherwise a part of the Department's staff as may be reasonably necessary to assist the Department in reviewing the proposed acquisition of control).

Kingsway and Kingsway America filed preliminary objections in the nature of a demurrer. With respect to Counts I and II, they ask this court to examine the plain language of the applicable statutes. First, section 1402(a)(1) of the Act pertains only to agreements to "acquire control" of a insurer, and, in this case, the charities received only 5% of Walshire stock, not enough for control of Lincoln General. Second, section 1405(a)(2) of the Act pertains to transactions "involving a domestic insurer and any person in its holding company system," but the transactions in this case involved Kingsway America, which is not a domestic insurer, and charities that are outside the Kingsway holding company system. Third, section 205(a) of the GAA Act pertains only to the transfer of assets of insurance corporations, and the Walshire stock was an asset of Kingsway America, which is not an insurance corporation as defined by the GAA Act. With respect to Count III for attorney fees, section 1402(f)(3) of the Act allows the Department to retain attorneys "at the acquiring person's expense," and neither Kingsway nor Kingsway America acquired control of Lincoln General in the transaction.

### I. Section 1402(a)(1) of the Act

█ Kingsway and Kingsway America argue that section 1402(a)(1) of the Act does not apply to the divestiture of Wal-

shire stock by Kingsway America. We agree.

Section 1402(a)(1) of the Act, 40 P.S. § 991.1402(a)(1) (emphasis added), provides as follows:

No person other than the issuer shall make a tender offer for or a request or invitation for tenders of, or enter into any agreement to exchange securities or seek to acquire or acquire in the open market or otherwise, any voting security of a domestic insurer if, after the consummation thereof, such person would directly or indirectly or by conversion or by exercise of any right to acquire, be in control of such insurer, and **no person shall enter into an agreement** to merge or consolidate with or otherwise **to acquire control** of a domestic insurer or any person controlling a domestic insurer unless, at the time any such offer, request or invitation is made or any such agreement is entered into or prior to the acquisition of such securities if no offer or agreement is involved, such person has filed with the department and has sent to such insurer a statement containing the information required by this section and such offer, request, invitation, agreement or acquisition has been approved by the department in the manner hereinafter prescribed.

Here, the charities acquired 5% of the Walshire stock. The definition of "control" in section 1401 of the Act states, in pertinent part:

Control shall be presumed to exist if any person, directly or indirectly, owns, controls, holds with the power to vote or holds proxies representing ten per centum (10%) or more of the voting securities of any other person. This presumption may be rebutted by a showing that control does not exist in fact. The Insurance Department may determine, af-

ter furnishing all persons in interest notice and opportunity to be heard and making specific findings of fact to support such determination, that control exists in fact, notwithstanding the absence of a presumption to that effect.

40 P.S. § 991.1401. The Department does not allege that it has determined after notice and an opportunity to be heard, and the making of specific findings of fact, that the charities have control of Lincoln General by virtue of their holding 5% of the Walshire stock. Thus, section 1402(a)(1) of the Act does not apply.

## II. Section 1405(a)(2) of the Act

■ Kingsway and Kingsway America next argue that section 1405(a)(2) of the Act does not apply to the divestiture of Walshire stock by Kingsway America. We agree.

Section 1405(a)(2) of the Act, 40 P.S. § 991.1405(a)(2) (emphasis added), provides, in pertinent part, as follows:

> The following transactions **involving a domestic insurer and any person in its holding company system** may not be entered into unless the insurer has notified the department in writing of its intention to enter into such transaction at least thirty (30) days prior thereto or such shorter period as the department may permit and the department has not disapproved it within such period:
>
> (i) Sales, purchases, exchanges, loans or extensions of credit, guarantees, investments, pledges of assets or assets to be received by the domestic insurer as contributions to its surplus, provided that, as of the thirty-first day of December next preceding, such transactions are equal to or exceed the lesser of five per centum (5%) of the insurer's admitted assets or twenty-five per centum (25%) of surplus as regards policyholders.

Here, the transaction involved twenty charities that are not in the holding company system. Thus, section 1405(a)(2) of the Act does not apply.

## III. Section 205(a) of the GAA Act

■ Kingsway and Kingsway America also argue that section 205(a) of the GAA Act does not apply to the divestiture of Walshire stock by Kingsway America. We agree.

Section 205(a) of the GAA Act, 15 P.S. § 21205(a) (emphasis added), provides, in pertinent part, as follows:

> (a) General rule.—Any plan of merger, consolidation, exchange, **asset transfer,** division or conversion **of any insurance corporation,** any recapitalization or voluntary dissolution of any insurance corporation or any issuance of shares by any insurance corporation in exchange for shares of another insurance company shall become effective only if approved by the Insurance Department.

Section 201 of the GAA Act, 15 P.S. § 21201 (emphasis added), defines "insurance corporation," in pertinent part, as follows:

> As used in this division, the term "insurance corporation" means any **domestic** insurance company of any of the classes described in section 201 or 701(3) of the act of May 17, 1921 (P.L. 682, No. 284), known as The Insurance Company Law of 1921, or incorporated under the acts of April 28, 1903 (P.L. 329, No. 259), April 20, 1927 (P.L. 317, No. 190), June 24, 1939 (P.L. 686, No. 320), June 20, 1947 (P.L. 687, No. 298), June 28, 1951 (P.L. 941, No. 184), July 15, 1957 (P.L. 929, No. 401), or any similar act relating to the incorporation or reincorporation of limited life insurance companies.

Here, Kingsway America transferred its Walshire stock to twenty charities. Kings-

way America is a Delaware corporation, not a domestic insurance company.

## IV. Section 1402(f)(3) of the Act

■ Finally, Kingsway and Kingsway America argue that section 1402(f)(3) of the Act does not allow the Department to recover attorney fees from them. We agree.

Section 1402(f)(3) of the Act, 40 P.S. § 991.1402(f)(3) (emphasis added), provides as follows:

> The department may retain **at the acquiring person's expense** any attorneys, actuaries, accountants and other experts not otherwise a part of the department's staff as may be reasonably necessary to assist the department in reviewing the proposed acquisition of control.

Here, neither Kingsway nor Kingsway America acquired Walshire stock, or control of Lincoln General.

Accordingly, we sustain the preliminary objections and dismiss the Petition with respect to Kingsway and Kingsway America.

### ORDER

AND NOW, this 1st day of April, 2010, it is hereby ordered that the preliminary objections filed by Kingsway Financial Services, Inc. and Kingsway America, Inc. are sustained and that the petition for review filed by the Commonwealth of Pennsylvania, Department of Insurance, is dismissed with respect to them.

## CONCURRING OPINION BY Judge PELLEGRINI.

Although I am compelled to agree with the majority that the scheme by Kingsway Financial Services, Inc. and Kingsway America, Inc. (collectively, Kingsway) to jettison its failing subsidiary Lincoln General Insurance Company (Lincoln) by bribing 20 charities to take the stock of its subsidiary Walshire Assurance Company (Walshire), a holding company that wholly owns Lincoln, complies with Sections 1402(a)(1) and 1405(a)(2) of the Insurance Holding Companies Act[1] and Section 205(a) of the GAA Amendments Act of 1990,[2] I write separately to highlight its improper use of charitable corporations to accept its detritus.

Faced with the prospect of Lincoln's deteriorating financial condition and, apparently desperate to rid itself of Lincoln before its ultimate demise or any obligations it may have had under debt covenants, Kingsway concocted an elaborate scheme to completely divest itself of Lincoln with minimal cost to itself. On Friday, October 16, 2009, Kingsway contacted at least 20 different charities to inquire whether someone would be present at the charities' offices the following Monday, October 19, 2009, to accept a donation. At this time, Kingsway refused to provide any information to the charities about the "donation." That Monday, Kingsway representatives visited, in person, each of the charities that had been contacted the previous Friday. Each charity was presented with a stock certificate for 226,112.55 shares (or 5%) of Walshire's stock (and hence, 5% of the ownership interest in Lincoln) and a check from Kingsway for $20,000 as a bribe to accept the Walshire stock. Upon receiving this "donation," a representative of each charity was required to sign a gift receipt *and have their photograph taken with the stock certificate* as acknowledgement of its receipt.

---

1. Act of May 17, 1921, P.L. 682, *as amended*, 40 P.S. §§ 991.1401—991.1413.

2. Act of December 19, 1990, P.L. 834, 15 P.S. § 21205(a).

The fact that the $20,000 check was intended as a bribe rather than a *bona fide* donation was highlighted by the actions of one of the contacted charities. This unnamed charity, when presented with over 226,000 shares of an insurance company and the bizarre requirement that its representative have his photograph taken by Kingsway while holding the stock certificate, questioned the propriety of the transaction. Rather than donating the $20,000 to this charity without the accompanying 5% interest in Lincoln, Kingsway showed that the $20,000 check was a *quid pro quo* in return for accepting the stock. It immediately refused to provide the $20,000 "donation" to this charity and immediately found another charity to take its place. Obviously, Kingsway had planned in advance for this very scenario and had back-up charities in mind. By the end of the day, Kingsway had given away all of its stock in Walshire to 20 different charities who were now Lincoln's owners.

Three additional points as to the nature of Kingsway scheme: first, all of these charities were located in the New York City area and, thus, conveniently out of reach of Pennsylvania authorities. Second, not a single one of these charities had any history of owning insurance companies or had the capacity or the resources to figure out how or to meet Lincoln's obligations to its customers. Third, Kingsway did not notify the Pennsylvania Insurance Department (Department) of the transaction until the day it occurred when it was already a done deal.

Once the Department belatedly learned of the scheme, it requested the names of the charities involved. Despite repeated requests, Kingsway *refused to provide the names of the charities.* On October 26, 2009, the Department learned the names of five of the charities from Lincoln. (It is unclear when Lincoln learned their identi-

ties or the nature of the transaction.) The Department contacted those charities and strongly recommended that they return the stock "donation" to Kingsway. At least one of those charities, the Children's Tumor Foundation, attempted to return both the stock and the $20,000 to Kingsway. *Kingsway responded by asserting that it would not accept the return of the stock,* essentially stating that the charities were stuck with it whether they liked it or not. By this point, on October 28, 2009, following repeated requests by the Department, Kingsway finally provided the names of the 20 charities.

Kingsway's obvious attempt to cover-up the true nature of its scheme has continued. The Department has on numerous occasions requested documentation from Kingsway showing that it complied with corporate formalities, including those found in 15 Pa.C.S. §§ 1727, 1732, 1757 and 1932. Kingsway has **categorically refused to provide** this information. Kingsway has **refused to provide** documentation that a majority of the directors of Walshire approved the transaction. Kingsway has **refused to provide** documentation showing that the transaction was in accordance with Walshire's by-laws or pursuant to resolutions or orders of the board of directors. Kingsway has **refused to provide** documentation that the transaction was authorized by a majority of Walshire's shareholders. Kingsway has **refused to provide** documentation that Joseph Stillwell, who is the sole signatory of the stock certificates and is listed as President and Secretary of Walshire, was properly elected an officer of Walshire according to its bylaws. Finally and most importantly, Kingsway has **refused to provide** copies of the debt covenants it made with Lincoln, which presumably were the reason for the entire transaction in the first place.

Because the nature of the debt covenants and other obligations Kingsway may have had, the end result of the scheme is that Kingsway has no obligation to cover Lincoln's debts to its insureds, potentially costing taxpayers of Pennsylvania who bear the ultimate cost of Lincoln's failure to meet is obligations. While its scheme may not have violated the insurance laws of Pennsylvania, it is well within the powers of the Attorney General of Pennsylvania and the Attorney General of New York to investigate whether Kingsway's use of charitable corporations was improper or any fraud occurred.