# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Cardinal Crossing GP, LLC t/a :
Cardinal Crossing Realty :
Associates, L.P., :
                Appellant :
                 :
           v. : No. 1741 C.D. 2016
                 :
Marple Township :
                 :
Cardinal Crossing GP, LLC t/a :
Cardinal Crossing Realty :
Associates, L.P. :
                 :
           v. : No. 1781 C.D. 2016
                 : Argued: May 1, 2017
Marple Township, :
                Appellant :


BEFORE:    **HONORABLE MARY HANNAH LEAVITT,** President Judge
                **HONORABLE RENÉE COHN JUBELIRER,** Judge
                **HONORABLE MICHAEL H. WOJCIK,** Judge


<u>**OPINION NOT REPORTED**</u>


**MEMORANDUM OPINION BY**
**JUDGE COHN JUBELIRER**            **FILED: July 20, 2017**

     Cardinal Crossing GP, LLC t/a Cardinal Crossing Realty Associates, L.P. (Cardinal Crossing) appeals from the Order of the Court of Common Pleas of Delaware County (common pleas) sustaining the demurrer filed by Marple Township (Township) and dismissing, with prejudice, Cardinal Crossing's

Complaint seeking monetary damages from Township. Township has also filed a cross appeal. At issue is whether a developer who spends substantial funds on a development, in reliance on statements of support from a committee formed by the Township which includes Township officials, can recover damages from the Township when the Board of Commissioners (Board) does not adopt the requested zoning amendment. Because re-zoning is a legislative act, which requires official action of a majority of the Board during a public meeting, unofficial action by Township officials cannot bind the Township to take legislative action; we therefore affirm.

Cardinal Crossing filed its Complaint on August 29, 2016, asserting the following factual averments, which are accepted as true for the purposes of ruling on a demurrer. *Palmer v. Bartosh*, 959 A.2d 508, 512 n.2 (Pa. Cmwlth. 2008). In April 2013, the Catholic Archdiocese of Philadelphia (Archdiocese) met with Township representatives about its intent to sell approximately 213 acres of undeveloped land it owns in the Township (Property) for a mixed-use development. Thereafter, Archdiocese solicited purchase offers to develop the Property. One type of purchase option, the "Approvals Contingency" option, provided for cash sale subject to development approval contingencies, but required a non-refundable deposit of five million dollars. (Compl. ¶¶ 9-10.) Although Township was aware Archdiocese intended to sell the Property for mixed-use development, which would require an amendment to the Property's existing zoning classification, Township did not express any opposition to the planned mixed-use development.

In January 2014, Township created the "Marple Township Economic Development & Smart Growth Committee" (Development Committee), which was

2

chaired by Commissioner Joseph Ruffo and included as members Commissioners Robert Fortebuono and John Lucas. (*Id.* ¶¶ 14-15.) The Township's Board discussed the Property's development at its February 10, 2014 meeting and that the Development Committee was to meet with developers to "consider private issues" related to proposed development. (*Id.* ¶ 16.) On July 18, 2014, Cardinal Crossing met with the Development Committee and other Township representatives and presented its conceptual layout for the development, which included 1,100,000 square feet of commercial/office space and 375 townhomes. Cardinal Crossing requested that if the proposed development was not going to be allowed, it should be told now before it finalized the purchase agreement and put up the substantial, non-refundable deposit. The various representatives indicated their support and acknowledged that the zoning would have to be changed. Cardinal Crossing asked whether the proposed development had the full support of the Board and was told it did if Commissioner Lucas supported it. Cardinal Crossing executed a sales agreement for the Property in the amount of $47 million on September 2, 2014.

Between August 14, 2014, and Spring 2016, Cardinal Crossing met with various Township representatives to discuss the proposed development and the necessary amendments to the zoning ordinance and Township's Comprehensive Plan. These individuals expressed support even though there was community opposition, and the Delaware County Planning Commission intended to issue a review critical of the proposed zoning amendments. On May 21, 2015, Cardinal Crossing formally submitted the proposed zoning amendments, a zoning map change, and its fully-engineered preliminary plan application (Application), which was prepared at the Township's Solicitor's request despite Cardinal Crossing's concern about doing so before the approval of the zoning change. During this time

period, Cardinal Crossing paid the required five million dollar deposit, all of which became non-refundable on June 8, 2015, and spent more than two million dollars on the Application and proposed zoning amendments.

Beginning in late summer and early fall of 2015, community opposition to the proposed development began to grow. Cardinal Crossing presented its Application at Township's Planning Commission meetings on December 3, 2015, and January 13, 2016, which was met with community opposition. Following these meetings, Cardinal Crossing again met with certain Township representatives who now indicated there were traffic problems and the proposed plan "may[]be too dense." (Compl. ¶ 95.) The Township's Planning Commission voted to recommend denying the proposed zoning amendments and Application. At its May 11, 2016 meeting, a majority of the Board voted **not** to recommend rezoning the Property. Due to the change in Township's position, Cardinal Crossing did not have time to submit an alternative plan before its agreement of sale with the Archdiocese expired on July 1, 2016.

In the single count of the Complaint, Cardinal Crossing asserts: the Township representatives, with whom it met with the authorization of Township, repeatedly represented that Township wanted the Property developed as proposed; Township knew or should have known Cardinal Crossing would rely upon these representations; and it reasonably relied upon these representations to execute the agreement of sale, pay the deposits, and prepare the Application and zoning amendments to its detriment. (*Id.* ¶¶ 102-15.) Cardinal Crossing alleged it spent

4

more than seven million dollars relying on these representations and sought to recover that amount from Township based on a theory of promissory estoppel.[1]

Township filed preliminary objections (POs) to the Complaint, as well as a Memorandum of Law in support. In its demurrer, Township argued that although Cardinal Crossing averred it relied upon the statements of various Township representatives, those representatives had no authority to "opine on land development applications or zoning code text amendments" because, pursuant to The First Class Township Code,[2] only the Board could take official action on Township's behalf through a majority vote at a public meeting. (Township's POs ¶¶ 5-6, 12-13.) Because there was no allegation a majority of the Board ever told Cardinal Crossing to act as it did, made any representations or promises to Cardinal Crossing, or took any official action other than the May 11, 2016 vote, Cardinal Crossing's reliance on the alleged unofficial representations was not reasonable.[3] Cardinal Crossing filed a response to Township's POs and a Memorandum of Law in support.

Without holding oral argument, common pleas issued its Opinion and Order on October 11, 2016, sustaining Township's demurrer because, based on the facts pleaded in the Complaint, it was certain under the law that no recovery was

---

[1] To state a claim for promissory estoppel, a plaintiff must allege the following: "(1) the promisor made a promise that would reasonably be expected to induce action or forebearance on the part of the promise; (2) the promisee actually took action or refrained from taking action in reliance on the promise; and (3) injustice can be avoided only by enforcing the promise." *Peluso v. Kistner*, 970 A.2d 530, 533 (Pa. Cmwlth. 2009).

[2] Act of June 24, 1931, P.L. 1206, *as amended*, 53 P.S. §§ 55101-58502.

[3] Township asserted several other POs, including that the promissory estoppel claim was barred by the act commonly known as the Political Subdivision Tort Claims Act, 42 Pa. C.S. §§ 8541-8542. Cardinal Crossing filed a PO asserting this affirmative defense could only be raised in New Matter. Common pleas overruled Township's PO for this reason, which is the basis for Township's cross-appeal to this Court.

possible. Common pleas explained its decision as follows. Although Cardinal Crossing received various statements of support from various Township representatives through the land use development process, no statement of these representatives could rise to the level of an inducement or promise **by Township**. (Common Pleas Op. (Op.) at 4-5.) Cardinal Crossing knew the enactment of a zoning amendment was a legislative act that would be binding only upon a vote of the Board. Finding statements of support by municipal officials prior to final legislative action to constitute inducements that would give an applicant enforceable rights would effectively remove the decision from the governmental body charged with enacting the legislation, and common pleas was unaware of any authority supporting this contention. To find that Cardinal Crossing justifiably relied upon the statements of support for a proposal as binding promises of Township "is far beyond where the law and case law can take it." (*Id.* at 5.) Moreover, even if Cardinal Crossing did not know municipal representatives could not make a binding legal promise, such ignorance would not be reasonable or justifiable. If it were, "every disappointed zoning or land use applicant would be able to sue the municipality in a separate [civil] Action to recover for damages and costs [based] on . . . alleged 'promises' made to them during the process by a variety of township . . . representatives," a result rejected in *Monger v. Upper Leacock Township*, 132 A.3d 585 (Pa. Cmwlth.), *petition for allowance of appeal denied*, 141 A.3d 483 (Pa. 2016). (Op. at 5-6.)

On appeal,[4] Cardinal Crossing argues the following. It adequately pleaded a claim for promissory estoppel and common pleas erred in finding Cardinal

---

[4] This Court's review of an order resolving preliminary objections is limited to determining whether common pleas committed legal error or abused its discretion. *Palmer v.*
**(Footnote continued on next page…)**

6

Crossing's reliance was not reasonably justified because this is a question of fact that must be answered by the fact finder, not resolved at the preliminary objection stage. *Toy v. Metro. Life Ins. Co.*, 928 A.2d 186, 208 (Pa. 2007). Like the plaintiffs in *Lobolito, Inc. v. North Pocono School District*, 755 A.2d 1287 (Pa. 2000), and *Cornell Companies, Inc. v. Borough of New Morgan*, 512 F.Supp. 2d 238 (E.D. Pa. 2007), Cardinal Crossing pleaded it relied upon the continued promises of municipal actors, and those promises induced it to expend substantial sums to its detriment, and, as in those cases, its claim should withstand a demurrer. Additionally, it pleaded that it was justified in relying on the representations of the Development Committee because that Committee was formed by Township and, along with other Township representatives, was designated as the Board's agent for the development of the Property. Based on the pleadings, it is clear there were promises made by various Township representatives authorized to act on Township's behalf which Township should have reasonably expected to induce action on the part of Cardinal Crossing, and which did induce such action. Such a claim is actionable if injustice can be avoided only by enforcing those promises or awarding damages for breach of the promise. *Crouse v. Cyclops Indus.*, 745 A.2d 606, 610 (Pa. 2000); *Matarazzo v. Millers Mut. Group, Inc.*, 927 A.2d 689, 692 (Pa. Cmwlth. 2007).

---

**(continued…)**
*Bartosh*, 959 A.2d 508, 512 n.2 (Pa. Cmwlth. 2008). "A demurrer can only be sustained where the complaint clearly is insufficient to establish the pleader's right to relief." *Id.* (citing *Cnty. of Allegheny v. Commonwealth*, 490 A.2d 402, 408 (Pa. 1985)). "A preliminary objection in the nature of a demurrer admits as true all well-pled material, relevant facts and every inference fairly deducible from those facts," but does not admit as true any conclusions or averments of law. *Id.* "[A] preliminary objection in the nature of a demurrer should be sustained only in cases that clearly and without a doubt fail to state a claim upon which relief may be granted." *Id.*

Township argues in response as follows. The reasonableness of Cardinal Crossing's reliance can be decided at the preliminary objection stage, *Peluso v. Kistner*, 970 A.2d 530, 532-34 (Pa. Cmwlth. 2009), and promissory estoppel is not a legally viable claim under these circumstances. The process of enacting and amending a zoning ordinance is a legislative function of a municipality's governing body, and when the governing body acts in its legislative capacity those actions are purely within its discretion. Sections 601 and 909.1(b)(5) of the Pennsylvania Municipalities Planning Code (MPC), 53 P.S. §§ 10601, 10909.1(b)(5),[5] *Springwood Dev. Partners, L.P., v. Bd. of Supervisors of N. Cornwall Twp.,* 985 A.2d 298, 302-04 (Pa. Cmwlth. 2009). The Board can only perform a legislative act or enter into an agreement on Township's behalf through an official action voted on by a majority of a quorum of its seven commissioners at an advertised public meeting. Cardinal Crossing has not averred any facts related to any official action by Township between the creation of the Development Committee and appointment of three (of seven) Commissioners thereto and its official vote on May 11, 2016, that could be viewed as a contract-like promise by Township to enact the zoning code amendment proposed by Cardinal Crossing upon which Cardinal Crossing could have reasonably relied. Thus, there was no error in common pleas' determination that the law will not allow recovery here.

_____

[5] Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. §§ 10601, 10909.1. Section 601 states, in pertinent part, "[t]he governing body of each municipality, in accordance with the conditions and procedures set forth in this act, may enact, amend and repeal zoning ordinances to implement comprehensive plans and to accomplish any of the purposes of this act." 53 P.S. § 10601. Section 909.1(b)(5) was added by Section 87 of the Act of December 21, 1988, P.L. 1329, *as amended*, 53 P.S. § 10909.1(b)(5), and provides that "[t]he governing body . . . shall have exclusive jurisdiction to hear and render final adjudications in . . . [a]ll petitions for amendments to land use ordinances, pursuant to the procedures set forth in [S]ection 609" and "[a]ny action on such petitions shall be deemed legislative acts." *Id.*

"Promissory estoppel enables a person to enforce a contract-like promise that would be otherwise unenforceable under contract law principles." *Peluso*, 970 A.2d at 532. To state a claim for promissory estoppel, a plaintiff must allege the following: "(1) the promisor made a promise that would reasonably be expected to induce action or forbearance on the part of the promisee; (2) the promisee actually took action or refrained from taking action in reliance on that promise; and (3) injustice can be avoided only by enforcing the promise." *Id.* at 533. These three factors must be strictly enforced to prevent the "loose application" of promissory estoppel. *Id.* Promissory estoppel requires both inducement and detrimental reliance. *Matarazzo*, 927 A.2d at 692. Whether a plaintiff's reliance was reasonable or "justifiable . . . is typically a question of fact for the fact-finder to decide, and requires a consideration of the parties, their relationship, and the circumstances surrounding their transaction." *Toy*, 928 A.2d at 208. However, this is not always a question of fact and promissory estoppel claims can be dismissed at the preliminary objection stage on this basis. *Pittsburgh Baseball, Inc. v. Stadium Auth. of Pittsburgh*, 630 A.2d 505, 509 (Pa. Cmwlth. 1993) (sustaining a preliminary objection to a promissory estoppel claim because, *inter alia*, the plaintiff's reliance on certain oral promises was not reasonable).

Although we understand why Cardinal Crossing believes it was wronged, there is no error in common pleas' conclusion that it is certain under the law that no recovery is possible in these circumstances. Cardinal Crossing's Application sought to re-zone the Property to allow for its development for mixed commercial and residential uses. A request for re-zoning "requires the governing body . . . to act in its legislative capacity and determine whether the re-zoning is in the best interest of the community." *Springwood Dev. Partners*, *L.P.,* 985 A.2d at 302-03.

The authority to enact zoning amendments rests **exclusively** with the governing body, here, the Board, 53 P.S. §§ 10601, 10909.1(b)(5); *Springwood Dev. Partners*, *L.P.,* 985 A.2d at 302-04, and requires a vote of the majority of the Board at a public meeting, *see Commonwealth ex rel. Zimmerman v. Kleiman*, 402 A.2d 1343, 1344 n.4 (Pa. 1979) (holding that, under The First Class Township Code, the actions of a majority a governing body made at a public meeting officially called to order with a quorum present are proper and have lawful effect). It is well-settled that, as **a purely legislative act**, a governing body's consideration of an application to re-zone is "within the **complete discretion** of the local governing body." *Springwood Dev. Partners*, *L.P.,* 985 A.2d at 304 (emphasis added).

Cardinal Crossing, who agreed to purchase the Property for $47 million in cash and pay a $5 million non-refundable deposit subject to it **receiving** the "standard development contingencies including . . . **final and non-appealable zoning** and site plan **approvals**," (Compl. ¶¶ 9-10, 38, 40 (emphasis added)), was aware that, in order to develop the Property as desired, an amendment to the zoning ordinance was required.  As this could **only** be performed through an **official** action of a **majority** of the Board during a **public** meeting, we agree with common pleas that Cardinal Crossing's reliance on **unofficial** statements and representations as being **legally binding promises of Township** was **not** reasonable or justified.  This is particularly true where Cardinal Crossing was aware of the community opposition to the proposed development and expressed its own hesitation to expend the funds on the Application prior to the Board enacting the zoning amendments.

Notwithstanding the lack of official action by the Board, Cardinal Crossing argues it could reasonably and justifiably rely on the alleged representations as promises of Township because the individuals with whom it met were **designated** Township's **agents** for the development of the Property. However, there are no averments that Township authorized these individuals to legally bind it, through their personal statements at private meetings, to enact the required zoning change. The Development Committee was intended to "act[] as the conduit between the [Board] and the developers of the [Property]" "to 'consider private issues' related to the proposed development of the" Property. (Compl. ¶¶ 16-17.) The remaining individuals were employees and an independent contractor of the Township, who were responsible for assisting Cardinal Crossing through the process. We have held that reliance on oral representations by government officials who did not have the authority to bind a government entity is not reasonable and cannot be used to assert a claim for promissory estoppel. *Pittsburgh Baseball, Inc.*, 630 A.2d at 509 (potential purchasers of baseball team alleged they relied to their detriment on oral promises by mayor that city would provide funding to them; court sustained demurrer to promissory estoppel claim finding reliance not justifiable). Such reliance is not reasonable because "it is a general fundamental principle of law that persons contracting with a municipal corporation must at their peril **inquire into the power of the** corporation or its **officers to make the contract**." *Id.* (internal quotation omitted) (emphasis added). Therefore, the **unofficial statements** by those who are not alleged to have been given the authority to bind the Township do not, as a matter of law, constitute a "contract-like promise" by **Township** to enact the requested legislation upon which a claim for promissory estoppel can be based.

11

In the cases Cardinal Crossing cites, where a promissory estoppel claim against a governmental entity survived a demurrer, the governing body itself took **official** action that was later rescinded or breached. The school board in *Lobolito* entered into valid agreements with a developer to construct a new sewage treatment plant to serve a yet-to-be constructed elementary school and a residential subdivision, upon which the developer relied to expend monies to obtain permits and approvals, which were later abrogated by a successor school board. 755 A.2d at 1288, 1292. Similarly, the borough in *Cornell Companies, Inc.* entered into agreements regarding the design, construction, and maintenance of a sewage facility, under which the plaintiff expended substantial sums to construct the facility, and the borough subsequently refused to comply with the terms of the agreements. 512 F. Supp.2d at 250-51. Unlike in *Lobolito* and *Cornell Companies*, *Inc.,* here there is no **official** action by Township that Cardinal Crossing avers caused it to act to its detriment. Here, Cardinal Crossing relies upon the representations of support for the proposed development made by a minority number of the Board and by Township employees or independent contractors during the land development process. However, these individuals cannot bind Township into taking specific official legislative action because such actions are **solely** within the discretion of the Board itself. *Springwood Dev. Partners*, *L.P.,* 985 A.2d at 302-04.

For these reasons, based on the facts pleaded and alleged in the Complaint, common pleas did not err in sustaining the demurrer and dismissing the Complaint with prejudice.  Accordingly, we affirm.[6]

_____
**RENÉE COHN JUBELIRER,** Judge

---

[6] Because of our disposition, we will not address Township's assertions in its cross-appeal.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Cardinal Crossing GP, LLC t/a : 
Cardinal Crossing Realty :
Associates, L.P., :
                    Appellant :
  :
         v. : No. 1741 C.D. 2016
  :
Marple Township :
  :
Cardinal Crossing GP, LLC t/a :
Cardinal Crossing Realty :
Associates, L.P. :
  :
         v. : No. 1781 C.D. 2016
  :
Marple Township, :
                    Appellant :

## O R D E R

NOW, July 20, 2017, the Order of the Court of Common Pleas of Delaware County, entered in the above-captioned matter, is hereby AFFIRMED.

_____
RENÉE COHN JUBELIRER, Judge